IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**RONNIE WAYNE LAKEY**                                                                 **PLAINTIFF**

**V.**                        **NO. 4:18-CV-523-JM-BD**

**SOCIAL SECURITY ADMINISTRATION**                                **DEFENDANT**

**RECOMMENDED DISPOSITION**

This Recommended Disposition ("Recommendation") has been sent to Judge James M. Moody Jr. Any party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive any right to appeal questions of fact.

**I. Introduction:**

On July 8, 2016, Ronnie Wayne Lakey applied for disability benefits, alleging disability beginning December 11, 2011. (Tr. at 21) His claims were denied initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") also denied his application. (Tr. at 32) Mr. Lakey requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision now stands as the Commissioner's final decision. Mr. Lakey filed this case seeking judicial review of the decision denying his benefits.

## II. The Commissioner's Decision:

The ALJ found that Mr. Lakey had not engaged in substantial gainful activity from the alleged onset date of December 11, 2011 through the date last-insured of December 31, 2016. (Tr. at 23) At step two of the five-step analysis, the ALJ found that Mr. Lakey had the following severe impairments: osteoarthritis, degenerative disc disease, degenerative joint disease, hypertension, post-traumatic stress disorder ("PTSD"), obstructive sleep apnea, and obesity. *Id.*

After finding that Mr. Lakey's impairments did not meet or equal a listed impairment (Tr. at 24), the ALJ determined that Mr. Lakey had the residual functional capacity ("RFC") to perform the full range of work at the sedentary level with some additional limitations. (Tr. at 25) He could only occasionally stoop, kneel, crouch, and crawl. *Id*. He could not climb ramps, ladders, or scaffolds, and could not perform overhead reaching with the right upper extremity. *Id*. He would require the use of a cane for ambulating and balancing. *Id*. He could perform work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete. *Id*.

The ALJ found that Mr. Lakey was unable to perform any past relevant work. (Tr. at 30) At step five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find, based on Mr. Lakey's age, education, work experience and RFC, that he was capable of performing work in the national economy as surveillance monitor and assembler. (Tr. at 31-32) Based on the determination, the ALJ held that Mr. Lakey was not disabled. *Id.*

## III. Discussion:

A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and assure that the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (*citing Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). Stated another way, the decision must rest on enough evidence that "a reasonable mind would find it adequate to support [the] conclusion." *Halverson*, 600 F.3d at 929. The Court will not reverse the decision, however, solely because there is evidence to support a conclusion different from that reached by the Commissioner. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

B. Mr. Lakey's Arguments on Appeal

Mr. Lakey contends that the Commissioner's decision to deny benefits lacks substantial supporting evidence. He argues that the ALJ should have considered and discussed Mr. Lakey's Department of Veterans Affairs ("VA") rating and unemployability status. Further, he argues that the Appeals Council did not fully consider the new evidence Mr. Lakey submitted, to his detriment.

Mr. Lakey complained of left knee, right shoulder, and low back pain. But knee and shoulder x-rays were normal in 2011. (Tr. at 336-339). Mr. Lakey experienced relief from pain with an AC joint injection in his shoulder. (Tr. at 536). Lumbar x-rays revealed mild degenerative disc disease, which the ALJ found to be a severe impairment. (Tr. at

3

338). On two occasions, Mr. Lakey had negative straight-leg raises, and the range of motion in his spine was generally normal. (Tr. at 345-349, 2144-2147) An MRI of the lumbar spine revealed stable degenerative changes, with disc bulges, and some foraminal narrowing. (Tr. at 666) Mr. Lakey said that Flexeril and Gabapentin helped with pain, as did a TENS unit and massages. (Tr. at 74-77, 380). In March 2016, Mr. Lakey had no ankylosis or muscle spasm and walked with a normal gait. (Tr. at 1455). Still, his doctor found limitations on bending, lifting, walking, sitting, and standing (the doctor did not rate the severity of the limitations). (Tr. at 1459). These limitations were reflected in the RFC for sedentary work with postural restrictions.

Mr. Lakey had a physical consultative examination in July 2015, conducted by Dr. Garry Stewart, M.D. Dr. Stewart found normal range of motion in the spine, knees, and shoulders. (Tr. at 2144) He found negative straight-leg raises and no muscle weakness or muscle spasm. (Tr. at 2147) Dr. Stewart found that Mr. Lakey could walk without an assistive device, could walk on his heels and toes, and could squat. *Id*. Dr. Stewart found no limitations in walking, standing, sitting, lifting, or carrying. (Tr. at 2146)

The lack of limitations Dr. Stewart found is borne out by Mr. Lakey's activities of daily living, which included regularly walking one mile a day, preparing meals, shopping, driving, and attending church. (Tr. at 24, 752) Such daily activities undermine his claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). Dr. Stewart's findings are also supported by the opinions of the reviewing medical doctors who found Mr.

4

Lakey capable of sedentary work, with postural limitations. (Tr. at 108, 130) The RFC accurately reflected Mr. Lakey's physical limitations.

Mr. Lakey had obstructive sleep apnea, which was relieved by a CPAP machine, even though he did not consistently use it. (Tr. at 434-435). Mr. Lakey did not show up to all his appointments at the CPAP clinic, which was a recurrent theme throughout his medical history (missing at least four other appointments). (Tr. at 435, 436, 808, 1459, 1536) A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) And while sleep was sometimes a problem for Mr. Lakey, he said that medications worked to improve his sleep. (Tr. at 578, 1424, 1426) Moreover, Mr. Lakey, who was over 300 pounds, did not follow his doctor's advice to lose weight, which would have helped with his medical conditions. (Tr. at 26, 450)

Mr. Lakey suffered from PTSD after serving in the military. He said that Klonopin and Bupropion helped with symptoms, and in January 2016, he reported that he was doing well on his medications. (Tr. at 75-76) While he spent three days in inpatient treatment in 2014, by the end of his stay, Mr. Lakey said he was 100% better with increased mood and energy. (Tr. at 1721) On more than a handful of occasions, Mr. Lakey had normal mental status examinations at his appointments, with good insight and judgment and a cooperative disposition. (Tr. at 328, 502, 546, 876, 908, 1451, 1469) Throughout mental health treatment records, it was evident that instability at home

caused problems for Mr. Lakey and presented situational stressors rather than long-term, chronic debilitation.

The consultative psychiatric examiner found that Mr. Lakey was independent in activities of daily living, and that he could concentrate, communicate, and complete work tasks in a timely manner. (Tr. at 2136-2140) The reviewing medical consultants assigned Mr. Lakey a limitation to simple work. (Tr. at 110, 133) The ALJ properly incorporated these opinions into the RFC.

At various points in the record, there is evidence of Mr. Lakey's 90% VA disability and unemployability rating, based mostly on back pain, obstructive sleep apnea, and PTSD. (Tr. at 2052, 2124) Mr. Lakey argues that this should have resulted in a finding by the ALJ that he was disabled. The Administration, however, is not bound by the disability ratings of another agency, especially when the record does not justify a disability finding. *Pelkey*, 433 F.3d at 580; *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998). While the ALJ did not mention the VA rating in his decision, he discussed it in detail at the hearing, asking Mr. Lakey several questions about it. (Tr. at 80-85) The ALJ noted that most of the 2100-page record was evidence from VA hospitals, so he properly considered the evidence relevant to the VA rating. *Id*. And he satisfied his burden of discussing the record as a whole, even if he did not specifically cite to the VA rating.

Finally, Mr. Lakey claims that the Appeals Council should have considered the evidence of his VA rating and remanded based on that. But the evidence submitted to the

Appeals Council (just 4 pages with the VA rating breakdown) was duplicative of the multiple references to the VA rating throughout the voluminous record. (Tr. at 8-11) The Appeals Council referenced the evidence and explained why it did not affect the outcome. (Tr. at 2). The new evidence did not contradict the medical record before the ALJ or serve as a basis for disturbing the decisions of the ALJ or the Appeals Council.

## IV. **Conclusion:**

There is substantial evidence to support the Commissioner's decision that Mr. Lakey was not disabled. The ALJ was not bound by the VA disability rating, and the evidence submitted to the Appeals Council would not have altered the ALJ's discussion or decision. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

DATED this 31st day of May, 2019.

_____
UNITED STATES MAGISTRATE JUDGE